How do you want to argue this? Mr. Yerman, do you want to argue both cases at once, or do you want to argue Chen first, and then we'll hear from Mr. Marsteller, and then you'll argue Zheng, and then we'll hear from Mr. Cantor? I would prefer to argue both at the same time. Is that all right with you? So he'll do the whole argument, and then you'll get up and answer, and then you'll answer yours, or you don't prefer that? If I may be so bold. Now be bold! You're a lawyer, you can be bold. I think that would be confusing. Because you think they're different? I prefer it, because then Eric and I will be reaching back. Okay, I think that's true. All right, Mr. Yerman, I think you should argue Chen first, and then Mr. Marsteller will argue Chen, will respond, and you can rebuttal if you want, and then we'll do the other. Okay. May it please the Court, Gary Yerman on behalf of Appellant. The issue in this case, the Chen case, 07-3199, is similar to the issues in the second case that I'm arguing, as well as dozens of cases that are pending before this Court. I think you should speak up. Yes, Your Honor. The question is this. Is there evidence that has been presented to the BIA that was previously unavailable to the appellants in this situation? Up until the year 2004, appellants in this situation arguing with family planning laws were left with little substance in which to support their claims. The 1998 profile was submitted that touched on the one-child policy. The late Dr. Aird, John Aird, submitted a generalized affidavit. Dr. Aird's affidavit has been effectively destroyed, I would say, by the administration and our Court. I agree. It has given little weight according to the precedent decision. That's the U case. The U case, amongst others. What has happened, though, since 2004 is an abundance of evidence has come to light by these appellants that do establish and cooperate their claim. Now, before 2004, the country reports and supporting evidence did not say how children born outside of China to Chinese nationals were counted. It never mentioned how the Chinese officials, there was no official Chinese document supporting what the family policy claims were. There were no reports of any specific enforcement. There were no reports of any abuses on massive scales, and furthermore, there was no evidence of what financial penalties were imposed on violators. Since 2004, this evidence has come now to light. What is the evidence? Beginning with the 2005 and 2006 country report, the State Department now cites to massive abuses of the family planning law in China. Specifically, in 2005, they mentioned where 130,000 individuals were placed into population camps. That's in one community, right? That's correct. Now, out of those 130,000, an estimated 7,000 were either sterilized or forced to undergo late-terms abortion. Now, this, according to the country report, was only the most egregious example cited by the State Department. Which year's country report? 2005. Which year? 2005. Now, in 2006 and 2007, as the court properly stated, it was only evidence of provinces other than Fujian province. But now, in 2006, in the State Department report, there was evidence that forced abortions and sterilizations are taking place in Fujian province. So, on one side, you have the government saying, up until 2005, there may have been some reports, but no reports of physical coercion or forced abortions. Then, okay, there are reports of forced abortions and sterilizations, but there are none in Fujian province. Now, we have those in Fujian province and the government saying, well, we have it in Fujian province, but there's no report that children born outside of China are counted the same way as children born inside of China. But we did, now we have additional evidence to prove that there's no distinguishing characteristics or demark, excuse me, strike there. There are no distinguishing category between children born inside of China and those born outside of China. The Changler City Family Plan and Question and Answer book, as well as the Fujian province administrative decision, are now available. They existed, but now they're available. What do these documents say? Well, the question and answer book says, if you have one child, you must wear an IUD. If you have two children, you are forced to undergo sterilization. The Fujian administrative office and Changler City official document says, children born outside of China to Chinese nationals are not counted any differently towards a family planning policy. So, CFR 1003 states, when evidence that previously unavailable establishes that there are materially worse conditions in a country or change country conditions, along with prima facie eligibility to establish that claim, you must reopen that claim to allow the appellant or the applicant to file for asylum. I didn't ask you if you reserved any time for rebuttal. I did five minutes. Five minutes, you have that? Okay, I'm sorry, go ahead. No problem, thank you. So, in summary, what the position of the appellant is, is that we have now evidence, now we have evidence that shows that children born outside of China are counted the same as children born inside of China. We have evidence that shows that forcible abortions and sterilizations are now taking place in Fujian province. We have evidence as far as the 2006 country report that says, people who violate the family planning quotas are penalized one to ten times their annual salary. You know, the BIA found no evidence of change country conditions. What do we do with that finding? Well, I would look to, as the government will assert to the matter of SYG, the second circuit, the decision that the second circuit just came down with on October 10th. And in that decision, what the second circuit said was, they upheld the BIA and they said that, although that Guo may have demonstrated through the Fujian province and Changhua city family planning administrative record that returning Chinese nationals are subject to the same enforcement as her countrymen, she has not demonstrated prima facie eligibility that she will be forced to undergo a sterilization. So, I would urge the court to look at the evidence closely and find that unless China is the only country on the planet where women in their late twenties and early thirties are voluntarily undergoing sterilization, then something is amiss. You want us to differ from the second circuit? Is that what you're saying? I want the court to recognize that the second circuit found that Guo, SYG, Ms. Guo, may have established changed country conditions, but where I want this court to differ, respectfully differ from the second circuit, is find that the evidence does show that forced abortions and sterilizations are taking place. We should take that decision? Do we look at the evidence? What's our role? Your role is to determine if the BIA gave the appropriate weight to the evidence presented to them. Was their decision irrational and was it contrary to law? And I assert that it was irrational, because as I said, no other country is there evidence that women are voluntarily undergoing sterilizations after they have two children, so it's only natural to assume that even though there's no word in the Chinese law that says we're forcing these people to undergo sterilization, what other way are you going to prevent a family who is matriculating, as the normal family process is, to stop them from having a third child? If you want to stop a murderer from killing, you put him in jail. If you want to stop a person from having children... You don't put him in jail after he's committed the murder, but that's... Thank you. You don't put him in to prevent the murder. You're right, I misspoke. Wechsler in Columbia would have done that about 30 years ago. My point is this, Your Honor, is the only way to stop somebody from violating the family planning and choosing how many children they want to have is to sterilize them. Why should we want to stop another country from doing that which is that country's policy? Because we believe... Why should we do that? I believe that the Congress in enacting 110142A established a form of relief for people in these situations saying that it is a fundamental right to choose how many children you're allowed to have. Your Honor, without having siblings, we have no nephews and nieces, no aunts and uncles. The whole dynamic of the family is destroyed. It's torn down. Yeah, but China's position is that they have so many people that if they don't limit their population, they'll never move ahead in this world. And I agree with that position personally. However, the law says if you can establish that people are forced to undergo abortions or sterilization, they are eligible for asylum. Now, if you want to look at... The country reports, though, even the ones you refer to, 205, I don't think they say that everybody who comes back is automatically forced to have a sterilization... Well, abortion wouldn't come up until pregnancy, but they automatically force sterilization or automatically... There's much vaguer than that. Well, I agree, Your Honor. I mean, in a civil trial in the United States, we wouldn't even accept that evidence. What it does, it begs the question, who would report... Who is sent back to China, deported from this country with two children, goes back to China, is forced to be sterilized? Who would they complain to? To us? To go to the American consulate? To the Chinese? What reports would there be of such instances of persecution? I see that you're... I just had one... Yeah, go ahead. You know, at the end of your brief here, what you want us to do is to reverse, and what you want us to do is to send the matter back to the BIA to reopen. Okay? Now, what do you do at that point? You just file a... In effect, you're filing like a new... Asylum application. Correct. And in effect, what we would do is... All you want us to rule is on whether or not conditions have changed. Now, the changed conditions, you still might lose. That's correct. But at this point, in the last two or three years, we have volumes and volumes and volumes of background documentation that we would like to present to the immigration judges to decide, is there really a policy, a national or local policy, where people are being forced to undergo abortions or sterilizations? And I'm talking about approximately 800 pages of documents, Your Honor, and this is just a very fluid situation where these documents are starting to come out more and more and more to prove the very light burden we have, which is a reasonable possibility. That's Judge Greene's point. Does the proof change? The fact that now somebody comes out in 2006 or 2005 and says, yes, they're doing this, that, and the other thing, but the linchpin of either, whether it's 1229A or 1158, the linchpin is change in the country. Where is the proof of change? Well, what our argument is is proof of worsening country conditions. Change, but where's the proof of that? Well, I would say this. Before 2004, the argument was children born outside of China are not counted the same way. Now we have evidence that was previously unavailable that shows that. Where's the change in the country? It's not a question that new evidence comes available. It may be new evidence of something that happened a long time ago. My argument is this, Your Honor. What changed from the time the order was issued, in this case, to whenever it was, to today? I would point specifically to the 2006 country report that says now there are reports that in Fujian province people are being forced to undergo sterilizations. You're relying on the fact that they now say they have evidence that something happened that that didn't happen two years ago, three years ago, four years ago. I'm just basically reiterating what the government's position is. There's no evidence that this is happening in Fujian. Well, now there is. Well, we're going to wait and see. Why don't we see what the government's position is? Thank you. Thank you. May it please the Court. Eric Marsteller for the Attorney General. Are you in oil? I am, yes, ma'am. Good, because for a while they were sending us tax lawyers. We've jumped up the number of attorneys in our office now so we were handing them over to them again. Okay, that's very good. Thank you. Go ahead. The critical question here in terms of the Board decision is, did Chen show materially changed circumstances between his 2003 hearing before the immigration judge and when he filed his motion to reopen in 2007, March 2007? So that's really our window because we're just reviewing the Board's decision for abuse of discretion. And did the Board, based on the evidence before it, reasonably conclude that there was not significant evidence of changed country conditions? Well, is it that he has to show evidence of change or he has to show there's a change? I mean, there could be a change and he might not have had evidence of it, but now he does. Well, it would depend on whether that evidence was available at the time of his earlier hearing. For instance, if there's a report from, say, 2001, which was before his hearing before the immigration judge, but it wasn't published or available until 2005, which was after the immigration judge's decision, he could present that as previously unavailable evidence, and that could be considered by the Board. The statute says that. That's right. That's in the statute. It's in 1229A. Opposing counsel has urged the court to consider the 2006 country report and the 1999 Tangle City question and answer handbook. He asked the court to consider those. The 06 country report is not part of the record, and because the court's jurisdiction is limited to the jurisdictional limitations of this court, limited to reviewing the record that was before the Board. Yeah, but if he's claiming that the 06 report shows XYZ, then wouldn't we have to send it back to the BIA so it can evaluate it? Assume that we can't take it into account. Did he put it in the record? It is not in the record in this case, Your Honor. A couple points on that. He represents all these different people. Did any of them put the 2006 report into evidence? I imagine some of them may have. I don't have all the records. I would point out that the Board, in its published decision in JWS, addressed the 2006 country report. So even if the court were to find that that was somehow material. Can you give us the site? Yes, Your Honor. It is 24 INN Decisions 185. 2007, BIA 2007. Yeah. It's in the Board's decision in this case, and it's in our brief. Can I ask you about a legal argument you made that I found particularly intriguing? Sure. The statute on asylum generally is 1158. It normally bars repeat petitions, but says notwithstanding, you can't have a repeat petition if there has been changed circumstances or other things. It's not limited to changed circumstances in the country. It can be changed circumstances here. In the reopening statute, which is 1229A, again, you have an exception to the 90-day time limit, and that exception is based on change in country conditions in China. That's correct. One of the arguments you made, well, since part of his case is changed conditions here in the United States. He had two children here. You said that you can't rely on the general asylum statute. He has to pass through the... The motion to reopen. ...the hoops here, and that doesn't permit him to look at changed circumstances in this country. Therefore, you don't even get to what happened in China. Because he's relying, the argument you seem to make, he's relying on... Personal circumstances. Yeah, personal circumstances, which is okay on the asylum under 1158, but it's not okay on a motion to reopen. That's correct. And you make a rather, I won't say tortured, but a rather detailed, subtle argument that he has to satisfy the reopening statute, which means that there's no, he can't rely on things here, and therefore he fails, because since he's relying on personal changes here, he can't satisfy the statute on reopening, and therefore we never get to 1158. We never get to the issue of changes in China, because... Well, I think it's a little... I mean, it was harsh in your argument, but that's... To clarify a little bit, what we're saying is that the change in personal circumstances can't be considered in determining whether the motion to reopen was timely or not. But the court can consider any evidence, any other evidence of changed country conditions. So to the extent he argues that conditions, that the 2004 and 05 country report evidence changed country conditions in China since his hearing, the board properly did consider those evidence, that evidence in determining whether there was a change in country conditions. It's only that the fact that he has given birth to U.S. citizen children cannot be considered in determining whether the motion to reopen was timely. But your position is if the motion to reopen is timely, not untimely, he can't rely independently on 1158. Let's assume it was untimely, his motion. He doesn't pass the hurdle of reopening because you're not allowed to consider personal circumstances. Yes. Your position is if he can't get by the motion to reopen, he can't rely just on the theory this is a successive petition under 1158. That's correct, Your Honor. Except that position, we don't have to worry about conditions in China because your position would be he never gets by the reopen because to reopen we'd have to consider his changed circumstances here and therefore as he doesn't get by that, we don't even get to 1158. That's correct, Your Honor. It's a subtle argument, but one that disposes of the case if you accept it. And it's been agreed with... The Second Circuit may have accepted it. The Second, the Sixth, the Seventh, the Eighth, and the Ninth have all accepted it. And I sent a 28-J letter that cites all of those recent cases. Are you talking about the Shou case? No, Your Honor. I'm actually talking about the Yuan Jin case, which is the Second Circuit one. This is a somewhat different issue than the Shou case. The successive asylum application, what you have is, as Judge Arenas pointed out, there's two statutes that kind of work together, but there's no instructions in the regulations of the statute as to how they're supposed to work together. One says that an asylum application, an alien can only file one asylum application, and once that's been denied, there is an exception where they can file another asylum application if there's changed circumstances affecting their eligibility for asylum, such as... such as having children in the United States. You were talking about the cases cited in your letter of October 17. That's correct, Your Honor. In the... There's another letter here. There's two paragraphs. The second paragraph. I believe so, yes, Your Honor. Because you cite Lin v. McKaysey, which is the Eighth Circuit, and Yang v. McKaysey, which is the Sixth Circuit. In the first paragraph, it should be, Your Honor. The first paragraph says... What I'm talking about now is in that first paragraph. It's the successive asylum issue, whether an alien can file a successive asylum application after they've been ordered removed. He's done both. He has made a motion to reopen, but he's also filed an independent asylum application. That's correct. He's attempted to. He argues, I believe, is independently permissible under 1158. You say he can't do that unless he first passes the hurdles of 1229A. That's correct, Your Honor. And that's because we've got these two statutes that don't... that are ambiguous in terms of how they relate to women. How about our jurisdiction? Now, we have a petition for review, and before we look at anyone else's jurisdiction, we always look at our own. What's our jurisdiction? What limitations are there? In this case, the court would have jurisdiction over that issue because it's a legal issue, because it has to deal with statutory interpretation and the interplay between the two statutes. And pursuant to 8 U.S.C. 1252... How about these other cases? What limitations are there? To the extent that the alien is seeking review of a motion to reopen as untimely, the court has jurisdiction so long as the petition is timely filed. And I can't... unless the alien has some sort of criminal bar or other things, I can't think of any jurisdictional bars that would be applicable here. So we're able to resolve these cases? That's correct, Your Honor. Oh. This one I can speak for. I haven't seen... Well, there's a whole series here. Yeah, but I have not seen the record or the briefs for the other cases related to this one. I've discussed this one. Oh. Counsel, can I ask you... I'm asking it again. Under the motion to reopen, which is 1229A, do you... Leaving aside your opinion, I mean, does he satisfy that... just that particular statute? No, he doesn't because he didn't show evidence of changed country conditions. And you... Even if he did show changed country conditions, would he apply? Well, actually, I want to make sure... He's right to asylum. Clearly depends on what happened in the United States, not what happened... At least it starts with. He didn't have children in the United States. That's a change of conditions in the United States, not a change of conditions in China. So even if you assume that there was changed conditions in China, just assuming pregnancy, does he still qualify under 1229A to reopen where it limits the change, the consideration of changed conditions solely to the country where he's going to be sent back? But clearly part of his case is not only change in China, it's change that happened here. I think that's right, Your Honor. To the extent he relies on any change here, he would not be able to file a successive asylum application. Then your second position is if he doesn't qualify under the reopen, he can't turn to the asylum statute, which merely says you can look at any changed circumstances anywhere. And if there are changed circumstances that affect his eligibility, then it's okay even if he's filed a previous. That's correct. He's relied on that, at least in his brief he did. He's filed two separate petitions, one to reopen, one for just a straight new asylum application. And to clarify that point, Your Honor, if there was, if he had filed the motion to reopen in a timely manner within 90 days of the final order, then the child changed children in the U.S. that would be personal. Less than 90 days. So clearly he didn't do that. But that was just to clarify the issue there. And tell us how the Schau case fits in because in effect you're saying that that rejected in effect the proofs, these kinds of proofs in changed country condition cases. There's just, there's the two issues. There's the successive asylum application, which we'll set aside for a minute. Schau deals more with the motion to reopen grounds and considering the JWS, JHS, and SYG, which are all board decisions that were all considered by the Second Circuit in the Schau decision. Well, if we followed Schau, doesn't that just end the case? It would, Your Honor. Without all this other... Exactly. The Second Circuit... That's on a late, past, what is it, 90 days case. One of the three underlying precedent decisions considered in Schau was a matter of SYG. And that was a very similar fact pattern to what we have here. It was an untimely motion to reopen, submitted a bunch of evidence including country reports, and the board in the Second Circuit said that wasn't... And you have 90 days ordinarily to file, but if you show changed country conditions, then there's no particular limit. That's correct. It's funny. That's the same period the challenge of preference as we found out this morning. You weren't here to hear the argument. So that is correct, though. You have 90 days, and after 90 days, it's the... But after the 90 days, you can only rely on changed conditions in the country where you're sending them back. That's absolutely correct. It's a different language from a repeat asylum petition where it says any change of any kind that affects his right to asylum. That's absolutely correct. It's a different language. Remember, there are two petitions here, not one. Yes. That's correct, Your Honor. Unless the court has any further questions, government urges the court to deny the petition for review. Thank you. Well, is somebody going to argue on all the other... I guess we have eight, and we've asked for argument in two, and that makes the assumption that they're all the same. But it seems to me that one of them, and I can't find my note because I wasn't here. Didn't I send you a note? Yes, you did. That one of them might be different because that one was purely... Yes, that's the Lew case. The Lew case. I put that in my notes, too. Yeah. I don't believe we are prepared to speak on that, but we could certainly file a supplemental briefing on that if the court has any questions. I guess if we need it, we'll let you know. Okay.  Okay. Did you want to do some rebuttal? Your Honor, when you file a motion to reopen based upon changed country conditions, you have to have a motion that says based upon changed country conditions, it must be filed in conjunction with a new application for asylum or else it would be facially deficient. Meaning, so what if there are changed country conditions in China? If it doesn't materially affect you, it has no bearing on your personal circumstances. So if you file a motion to reopen based upon changed country conditions without supporting affidavits and application 589, the board or the immigration judge would find it deficient on its face and deny it based upon insufficient filing. That's because what you're trying to reopen isn't the asylum as such. It's a decision. Well... In other words, when you... What is it you want to reopen? You want to reopen the proceedings. That's correct. But then you have to go forward and present your new claim. Right. Okay. So you want to reopen the proceedings but... and then if you present the new claim and you do get a reopening of the proceedings, what does that mean? The new claim is then adjudicated on the merits? That's correct. The court asked if the 2006 country report was in the record. It is in several records. It may not be in this particular case but it is contained in the record. Depending on when the motion to reopen was filed, the country report comes out on March 7th of each year. So if it's filed... if it's filed on March 7th on a particular year, that year's country report would be published. It's actually for the year before. So all these motions to reopen if you look at it together, combined, will have all the country reports up through 2007. The 7th Circuit has decided  decided July 8th, 2008 and the 11th Circuit has decided in Yenier Lee decided 2007 that there is evidence of... of genuine evidence of unchanged country conditions or worse country conditions whether it's based upon the country report that says sterilizations are taking place or whether it's based upon the Board's decision in a matter of TZ supported by the country report that says... Where are those cases cited? The 7th Circuit? Yeah. They're not cited in the brief because they were just recently... they've recently been published. I can submit to this Court a 28-J... a supplemental brief... a letter brief. Are you citing cases to us now that are not in the briefs and were not brought to our attention in supplemental letters? That's correct. I am. That's not too fair. I... Believe me, this is really tricky. I understand and that was not my intention. I can submit a supplemental brief, a letter brief to the Court addressing the 7th Circuit and the 11th Circuit's decisions. Didn't you send us any letters? No, just the government side. I've been flying around to all the different jurisdictions getting whooped. Yeah, I know, but we're busy too. I know. I know. Those two circuits, the cases, did the Court grant relief? The Court found in both those cases that there was a worsening of country conditions. The 7th Circuit found based upon the amount of  upon people... Did the Court grant relief? Those cases have not been back to the Immigration Judge yet. They were both sent back to the Immigration... That's correct. But you got relief on the petition though to the Court of Appeals. Yes, sir. But the cases are still pending, one in Atlanta, Georgia, the other one in Chicago, Illinois. It takes a little while to go back to the BIA and then back down to the Court of Appeals. Are these your cases? These are my cases. That's correct. Boy, you really are around. Well, I do fly around because I have a lot of clients with the same issue and hopefully I'm doing a decent enough job representing them, at least I hope so. I'll save anything I rebuttal for the second case, but my arguments are the same and I don't think I need to rehash my arguments. What were you just talking to us about? Which cases? The 11th Circuit, Yanner, Lee, Y-A-N-E-R-L-I, it's the 11th Circuit decision 2008, I can give the Court a cite, as well as the Lynn, July 8th, 2008, 7th Circuit case, which Judge Posner decided that there was evidence of severe economic persecution of fines amounting to persecution. Economic  there are their own rules on economic persecution and that's not what, these people didn't file, didn't say economic persecution as a basis. Boy, I mean there's an opinion of Judge Becker and one of me, I think, that the economic persecution has to sort of take away your right to life almost. The Court will recognize that. And what the country reports have recently evidenced is that in these, in Fujian Province people are being fined between 1 and 10 times their annual salary for violating the family  Are all these cases out of Fujian Province, all your 8 cases? I don't know of each one. I would say 95%. Well, why there's not sufficient evidence from each province, it's trickling out. So then why should we overturn the BIA if we don't have evidence? I mean, can we, these are really provincial issues, these are local officials who are making these decisions city by city really. Yes, ma'am. So, which of them are not from Fujian Province? Well, I would say 95% of them are, and so I would urge the court... You know why they're from Fujian Province? Because Fujian Province is on the coast. Right. And that's where the skinheads operate, and so these people can come illegally because they can get the boats to come, and you don't get that anywhere else. Well, I don't know why we should make rules just for them. Well, because right now the evidence does show that in their province that people are being sterilized, and as far as what happens in China, it should affect us because we are the guardians of liberty and right and justice, and so that's what our laws say. Aren't we working with the skinheads? The snakeheads you mean? Yeah, the snakeheads. I mean, aren't we really working with them then? I mean, they get the money, but we're working with them because we help them. They actually instruct the people what to say. These are not nice people. I couldn't agree with you more, and I would say yes as to the claims, the snakeheads. One of them says in his brief that he's got three and he wants to go back so he can have more, so he can want to stay here, so he can have more. I mean, they live in China. They're not following the Chinese law. We're supposed to decide what China's laws should be. In Africa, FGM is the law. In other parts of China, discrimination of Tibetans is the law. Well, let me ask you this question. You want us to tell the BIA to reopen. Yes, sir. All right. Might it not be possible that there's material here and that maybe the BIA didn't consider it all at length and that we would remand it and tell them to reconsider and then decide whether to reopen? I think that would be sufficient by this attorney's belief. I mean, that's a conceivable result. I think that would be more than sufficient. I thought your issue was really a legal one. I thought, as I understood this when I read through it, that you were saying that the BIA erred as a matter of law because it took into account personal circumstances, not in country conditions. Isn't that what your argument is? That's how the BIA addressed their decision. Isn't that what you said in your brief? Initially, yes. You haven't said a word about that in your argument before us. Because the truth be told is we're not arguing change personal circumstances. We're arguing change country conditions in which the BIA made a specific finding. It says, rather, the evidence reflects conditions substantially similar to those that exist at the time of his first hearing with the government officially prohibiting the use of force to compel persons to submit to the BIA. It generally confirms a continuation of problems that exist. They made a specific finding that there was no change. And you want us like to say something, we'll send it back, and by the way guys, you're wrong. So not only are we sending it back to you, but we're instructing you to come to a different conclusion. They very specifically said there has been no change. Not that what you say may not be true, but that it hasn't changed since the hearing in 2003, the hearing where it was originally ordered deported. Which is why we're arguing legal error because there has been no change. And what the contradiction... That's not legal error, that's factual error. Why would that be legal error? The legal error is in the analysis, in the weight that they gave the evidence to support it. But where the contradiction lies is up until 2005, the BIA kept saying there is no evidence to prove your claim of future fear. There is not enough evidence. There's not enough evidence. Now there is enough evidence and the BIA is saying there is enough evidence and what it shows is there hasn't been a change. So on one side they're saying earlier in 2000 to 2005 you can't prove your claim of future fear because there's not enough evidence. Now there's enough evidence and the BIA is saying okay there is evidence but it's not showing any change. You can't have your cake and eat it too. I wrote an opinion, in fact called Chen, if you can believe it or not, several years ago published a presidential opinion where, in Fujian province, where the theme of country reports going way back even before 2003 was that the government had official policy against sterilization, against forced abortion, against all those things, but that there were sporadic kinds of violations and the panel unanimously found that there was no asylum granted in that case. And so what the board finds here, I mean the notion of the disconnect between what the country says its laws are, its regulations are, and what happens seems  known in China for quite some time and particularly in Fujian province which has been identified. I couldn't agree with you more but the key word being that there was a pattern, increased enforcement. The issue before us that you raised is whether they count a child born in this country as violating the one-child policy. I thought that was what the whole issue is and instead you're talking about whether they changed their abortion policy or have become stricter on that. Well if that's the only issue I would urge the court to follow the second circuit decision. Tell me what is your argument? Your red light has been on for about ten minutes. What is your argument precisely? The evidence now shows that children born outside of China are counted the same way as children  of the United States. The evidence shows that the conditions in China and specifically Fujian province have worsened because of the increased campaign for the one-child policy. Thank you very much. We'll take that under advisement. And we'll hear you  Thank you.